Brinkerhoee, C. J.
The case below was an information in the nature of a quo warranto, filed on the 19th of May, 1859, by the defendant in error, against the plaintiff in error, in the district court of Hamilton county.
The information alleges that the relator, Robinson, was, on the 8th of April, 1859, appointed “ chief of police ” of the city of Cincinnati, under the act of March 14, 1859, “to provide for the appointment of police commissioners,” etc. (56 Ohio L. 48), and that, by reason thereof, he is entitled to discharge certain duties formerly appertaining to the office of “city marshal;” and that the respondent, Gano (now plaintiff in error), claiming to be city marshal, is performing those duties without authority of law.
The respondent pleads:
1. Denying the appointment of the relator.
2. Alleging that the respondent has been duly elected and qualified as city marshal; and,
3. The third plea substantially combines in -one the allegations of the first and second pleas.
The first plea presents an issue of fact.
To the second and third pleas, the relator demurred generally.
*192 On hearing, the district court sustained the demurrer of the relator to the second and third pleas, and, leaving the issue of fact made by the first plea undisposed of, gave judgment of ouster against the respondent. Which ruling and judgment are assigned for error.
No question is made in argument, nor do we see how any can well be made, as to-the constitutional validity of those parts of the act of March 14, 1859, “ for the appointment *of police commissioners,” which bear upon the case before us. But, as the demurrer has the effect to admit the allegations of the third plea, that the relator was not duly appointed to the office of “ chief of police,” it is contended that the office of city marshal still remained in being pro tempore, and that he was the proper person to-perform the functions of chief of police until such officer was duly appointed, under the act of March 14, 1859.
In order to determine this question, it is necessary to refer to the terms of the statutes bearing upon it. Section 5 of the act of March 14, 1859, provides that “in all such cities of the first class, with a population exceeding eighty thousand inhabitants ” (in which, classification it is not disputed that Cincinnati belongs)', “there shall be no such office as that of city marshal, but the duties thereof, as now imposed by the acts to which this is supplementary on the city marshal, shall bo performed by the chief of police;” and this act, by express terms, takes effect and is in force from and. after its passage. The respondent, by his plea, claims to have been elected to the office of city marshal on the 4th of April, 1859, some eighteen days after this act took effect. This legislation is so plain and explicit that there seems to be no room for doubt, and none for construction. By the express terms of the act, there was, at the time of the respondent’s election, “no such office as that oi city marshal,” to which he claims to have been elected. And if this act had contained no provision as to the person or functionary on whom the duties formerly pertaining to the office of city marshal should devolve, in case of a failure to appoint a chief of police in the manner directed by that act, or prior to such appointment, it is difficult to see how the respondent could ever establish a claim to-exercise them. But there is no such omission. Section 7 of the same act provides that “ until the board of police commissioners, shall have appointed a chief of police, lieutenants, watchmen, and
station-house keepers, the appointment of such *officers shall *193 be made as now provided for by said acts to which this act is supplementary, but no longer.” “ Such officers.” To what does this phrase refer? Grammatically it refers to the. officers just before, and in the same section, mentioned, to wit, chief of police, etc. And that this reference is the one intended by the legislature, and that no other officers can be referred to is confirmed beyond all reasonable question, it seems to us, by the considerations that the office of city marshal had been, by a preceding section of the act, expressly abolished, and that one of the acts to which this is supplementary, does provide for the appointment of a chief of police. See act of April 17, 1854, Swan’s R. Stat. 991g, sec. 1.
"We are of opinion, therefore, that the attempt, in April, 1859, to elect the respondent to the office of city marshal was unauthorized by law, and void.
Again: It is claimed that the district court erred in rendering a. judgment of ouster against the respondent, without passing upon the right of the relator to the office of chief of police. But we think the third section of the act of March 17, 1838, “relating to informations in the nature of quo warranto,” etc. (1 Curw. 435), taken in connection with the first section of the amendatory act of March 18, 1839 (1 Curw. 562), clearly authorize such a judgment. Besides, the respondent is not only not entitled to complain that he-was dismissed from the case at the earliest moment, when it was ascertained that he had no right to the office he claimed, but to have retained him in the case after this, and pending the litigation of a. question in which he had ceased to have any interest, might have-been, to him, a serious grievance. .Whether it might not have been proper for the court below, after the judgment of ouster against, the respondent, to have caused the city of Cincinnati to be made a. party to the proceeding, with a view to the determination of the issue of fact remaining undisposed of, is a question not now before us. *It is very certain, we think, that the plaintiff in error had no further business there.

Judgment affirmed.

Scott, Sutliee, and Peck, JJ., concurred.
Gholson, J., did not sit, having formerly been of counsel,